# CHARLESTOWN.

## A. W. HANDLEY *v.* CHESAPEAKE & OHIO R. R.

### September 11, 1876.

1876.
August Term.

To entitle a party to a continuance of a cause for the absence of a witness, he must show that he has used due diligence to procure the attendance of such witness or his deposition, where the attendance cannot be had, and an affidavit stating that a material witness had been discovered recently, without showing any other reason for not procuring the evidence, is not a sufficient compliance with the rule. A case in which the plaintiff below was en_ titled to maintain an action for money had and received, under the circumstances of the case. See facts stated in opinion of the Court.

*Supersedeas* to two judgments of the circuit court of Cabell county, entered on the second and ninth days of June, 1874, respectively, in the above entitled cause, in which A. W. Handley was plaintiff and The Chesapeake and Ohio R. R. Company was defendant.

The facts appear in the opinion of the Court.

Hon. Evermont Ward, judge of said circuit court presided at the trial below.

*W. A. Quarrier* and *W. H. Hogeman* for said Company, plaintiff in error.

*John E. Kenna* for defendant in error.

EDMISTON, JUDGE:

The plaintiff below obtained a judgment in the circuit court of Cabell county, on the ninth day of June, 1874,

against "The Chesapeake & Ohio Railroad Company for the sum of $1,000, with interest and costs." To this judgment a *supersedeas* has been had, by which the action of the circuit court is brought under review in this Court. It appears that the company let sections one hundred and eighty-six and one hundred and eighty-seven on their road, to I. I. and T. I. Powers, Jr., who sublet the same to Cole, Hubbard & Co., and that by an arrangement with Cole, Hubbard & Co., the plaintiff below, who was a merchant in the neighborhood of the work, was to furnish their hands with goods and groceries, which he did to the amount of $849.48 cents for the month ending in June, 1871. The monthly advances thus made by Handley to the hands, was to be retained out of the wages of each hand, when the contractors paid their hands out of the monthly estimates, or collections from the railroad company, and not otherwise.

During the month for which this advancement was made to the hands, the engineer who had the power under the contract to do so, declared the contract for the construction of these sections "abandoned;" and did not pay directly to I. I. and T. I. Powers, or Cole, Hubbard, & Co., the sum due them by the estimates for that month; but proceeded to pay the hands in the employ of Cole, Hubbard & Co., the balance due them. Handley having heard that the contract had been thus abandoned, applied to one Kuper, called an engineer, to obtain his pay out of the wages of those hands. Kuper told him to attend at the place of payment on the seventeenth of June, 1871, and that he (Kuper) would either retain the amount of Handley's account out of the money due to hands, or if he paid the hands in full, then Handley could collect his accounts from each of them. Handley attended at the time and place, and furnished his account to said Kuper, who proceeded to settle with the hands and after deducting from the sum due each man, what he owed Handley, paid the hand the balance due him in money. Thus deducting from the sums due the several

hands, the whole amount of Handley's accounts against the hands, which amounted to the said sum of $849.48. He then refused to pay Handley this or any other sum. And Handley sued the railroad company for money, had and received to, and for, his use.

The company pleaded non-assumpsit; issue was joined thereon, and a jury found a verdict for the plaintiff for the sum of one thousand dollars, which is made up of the principal and interest to the day of trial. The defendant moved for a new trial, but the motion was overruled and judgment entered.

When the case was called for trial, the company moved a continuance, and filed the affidavit of the Vice President to the effect that "one C. C. Cady, a resident of Hanover county, Virginia, was a material witness for the defendant; that his importance was but recently discovered; that it was the belief of the deponent, that the defence could not safely go to trial without his deposition, and that deponent did not know of any other witness by whom the same facts could be proved. The court overruled the motion for a continuance, and the defendant excepted. This constitutes bill of exceptions No. 1.

After the verdict was rendered, the defendant moved the court for new trial, and on the overruling of the motion, he excepted and had the evidence certified, which makes Exception No. 2.

The first error relied on here, is that the circuit court erred in refusing his motion for a continuance. It is apparent that the affidavit fails to disclose such a state of facts, as entitled the party to the favor he asked. A party asking for the continuance of a cause on the ground of the absence of a witness, must show that he is a material witness, and that due diligence has been used to procure his attendance. The affidavit states that Cady is a material witness, and that his materiality had but recently been discovered. He does not give the court to

see and understand, that the materiality of the witness had been discovered so lately, that his deposition could not be taken. For all the court could see, there was ample time in which the deposition could have been taken, if proper diligence had been exercised. So that they failed to show a material fact, which was necessary to be shown, to enable the party to call upon the court for a continuance, the use of diligence, or such a state of facts as dispensed with the use of diligence. If the dis-- covery of this witness was of such a recent date, that the defendant in the use of reasonable diligence, could not obtain his deposition, the affiant could easily have stated that fact; but he does not so state, and I infer the fact did not exist. But this ground is supplemented by the fact that, at the time of the trial, the plaintiff was allowed to put in form, to some extent, his bill of particulars. In what respect this was done, does not appear. The court is allowed discretion in granting leave to amend, on such terms as may appear proper and just, and there is nothing, in this record, to show that the court did not properly exercise its judgment in the matter of amend- ment.

Bill of exceptions No. 2, certifies the evidence, not the facts, and the rule so well established in reference to such exceptions, must govern this case, which is, that it must be treated substantially as a demurrer filed to the evidence. In the evidence which I have given in the statement of this case, is embodied with the additional evidence, that Kuper said that the money, kept back by him for Handley, he intended to apply to the payment of any future claims that might arise against the com- pany, for work on said sections; that there was a written promise by Kuper to pay said amounts to said hands, and that said Kuper had authority to make said promise, and that the same was endorsed and confirmed by the chief engineer of said company; that the amount paid out, as aforesaid, to laborers, and from which accounts, the amount of plaintiff's claim was taken out and kept back, was for

work done upon said sections, and was included in the promise of the said Kuper, engineer, as foresaid. It was also proven by defendant, that the amount paid out by engineer's clerk to laborers, independent of the amount of Handley's claim, exceeded the estimates on those sections; that in the opinion of the company's chief and assistant engineers, they had the right to pay out to laborers on said section the amount of said estimates and no more, and also that they had no right to contract to pay more. The defendant also proved by Kuper that he had no recollection of promising to pay said claim; that it may have been presented, but he did not recollect it; did not think he had accepted it, and did not promise to pay it as defendant's agent; that if he had done so (in his opinion) he would have transcended his authority, which only extended to paying sums due to actual laborers so far as the money held out, and that he did not reserve any balance due I. I. and T. I. Powers for the benefit of the plaintiff. The plaintiff proved by one Hood, the clerk of said Kuper, that in making off the pay rolls to said laborers, and in paying them off, the amount of their store accounts were deducted, and the balance only paid over to them.

The contract between the company, and I. I. and T. I. Powers, for the construction of these and other sections, was introduced in evidence by the defendant. Is is only necessary to notice two provisions in this contract. "It is further agreed, that if out of any monthly estimate paid to the contractor, he shall fail to pay the wages of the laborers for that month, it shall be at the discretion of the engineer, thereafter, to provide for the payment of the laborers for each month, out of the estimate for the month, according to such rules as he shall prescribe."

"It is further agreed, that if, at any time, the said party of the first part shall refuse or neglect to prosecute the work, with a force sufficient, in the opinion of the said engineer, for its completion, within the time specified in this agreement, then and in that case, the engineer in

charge, or such other agent as the engineer may designate, may proceed to employ such a number of workmen, laborers and overseers, as may, in the opinion of the said engineer, be necessary to insure the completion of the work within the time hereafter limited, at such wages as he may find it necessary, or expedient, to give; pay all persons so employed, and charge over the amount so paid to the party of the first part, as for so much money paid to said party of the first part on this contract; or the said engineer may, at his discretion, for the failure to prosecute the work with an adequate force, for non-compliance with his directions in regard to the manner of constructing it, or for any other omission, or neglect of the requirements of this agreement and specifications on the part of the party of the first part, declare this contract, or any portion or section embraced in it, abandoned, which declaration and abandonment shall exonerate the said Chesapeake & Ohio Railroad Company from any and all obligations and liabilities arising under this contract, the same as if this agreement had never been made; and the reserved per centage of ten per cent. upon any work done by the party of the first part, or as much thereof, as, in the judgment of the chief engineer, will be necessary for the complete indemnity of the Company, may be retained forever by the said Railroad Company."

By these provisions, if the contractors failed to pay their laborers out of the last month's estimates, for the next month, the engineer had a right to pay the hands out of the estimate for that month.

And if the work was not carried on with such force, as the engineer thought necessary to complete the same as far as the engineer desired, or thought necessary, he had a right to employ such force as he thought proper, pay the wages and charge the amount so expended to the contractor as so much money paid on the contract; or the engineer might at his discretion, for a failure to prosecute the work with sufficient force, or for non-compliance

with directions in constructing the road, or for any other breach of the agreement, declare the contract, or any portion or section embraced in it, abandoned, and retain all, or any part of the reserved per cent. for the indemnity of the Company.

These are important powers reserved, and place the contractor completely in the power of the Company, or its engineers, and I think they throw light upon this transaction. It is proven that the engineer had agreed in writing to pay the laborers for this last labor, and that he had full authority to make that promise. Of course this power could only come from the Company; and it is a power that might well be assumed under either of the two first provisions. They had in their hands, whatever estimate the contractors were entitled to for that month's work. Upon the declaration, made by the engineer, that the contract, as to these sections, was abandoned, he had the right to say just what part of the reserved per centum should be paid over to, or withheld from, the contractors. Under this state of facts, they could well afford to authorize the engineer to bind the Company to pay the hands for the month's labor, as the evidence of the plaintiff shows was the fact.

Then the Company owed the hands of Cole, Hubbard & Co. their month's wages, and they had the month's estimate, with as much of the reserved per centum as the engineer of the Company thought proper to yield to the contractors, with which to pay. On the day of payment the Company thus owe each of these laborers so much money, and they pay that amount, with the sum the man owed Handley, and as much money, as together, equalled his wages. This, with the express promise that, if this account was taken from the wages of the man, it should be paid to the plaintiff. If they had not put in, as a charge to the man, and a credit to the Company, the amount of Handley's account against the man, they would have had to pay as much more money than they did pay him, as was equal to the account of Handley. Thus they

got credit with the laborer on their cash obligation, to the amount of Handley's account, and retained the money in their hands. This certainly makes out the receipt of so much money by the Company for the use of Handley· Suppose they had paid the hands in full, in cash, and then the hands had paid the Company the amount of Handley's account, would the claim for money had and received, been any more clearly made out? And would any one doubt the right of the plaintiff, Handley, to maintain his action for money had and received in the latter case?

But it is said that this was the act of Kuper, and not of the Company. The evidence clearly establishes his agency and authority to pay these hands out of the funds of the contractors, or the Company; and as he substituted the accounts of the plaintiff in lieu of money, the money remained in the treasury of the Company. Kuper said the money that equalled the accounts of Handley, was kept in the treasury of the Company, to meet any other liability that the Company might be subjected to. It seems to me, this is a matter that ought to be regarded as fully within the scope of this authority, and that as the Company received the benefit of this amount, by obtaining credit with the laborers, they ought to be required to pay it over to Handley; and especially under the express agreement of the engineer, the agent of the Company to disburse this fund, that he would pay the amount to Handley. The laborers paid to the Company the amount of their accounts due Handley, with his consent, and he never could have recovered the amount from them. It was, in fact, a payment by the laborers to the Company, with Handley's consent, and at his request, the amount of their indebtedness to him, and was a good payment by them to him; and it would be strange, indeed, if under such circumstances, the Company would not be liable to Handley, for the sum so collected for him, from his debtors.

The defendant seeks to prove a want of authority in

1876.
August Term.

Handley
v.
C. & O. R. R.

the engineer to thus bind the Company ; and their evidence tends strongly in that direction, but they submitted it to the decision of a jury, to be weighed against the evidence of the plaintiff, and the jury have found for the plaintiff.

The evidence thus submitted to the jury was in conflict with that offered by the plaintiff, and on a certificate of that evidence to this Court, it must disregard the evidence of the defendant, who excepts, which is in conflict with that of the plaintiff, and make such reasonable deductions in favor of the plaintiff from his evidence, as the Court would do upon a demurrer to evidence. So that, it appears to me, that in looking to the evidence proper to be considered by this Court, the plaintiff showed himself entitled to the verdict and judgment which he obtained.

The judgment must be affirmed, with costs to the appellee, &c.

The other Judges concurred.

JUDGMENT AFFIRMED.